IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES WILLIAMS (IDOC No. N-52706), | Case No. 17-cv-05076 |
| Plaintiff, | |
| v. | Honorable Andrea R. Wood |
| WEXFORD HEALTH SOURCES, INC., GHALIAH OBAISI, as Independent Executor of the Estate of Saleh Obaisi, SALEH OBAISI, CHARLES OKEZI, ALMA MIA MARTIJA, LOUIS SCHICKER, TARRY WILLIAMS, NICHOLAS LAMB, RANDY PFISTER, GUY PIERCE, JILL PARRISH, DAVID MANSFIELD, and SARAH JOHNSON, | **JURY TRIAL REQUESTED** |
| Defendants. | |

## AMENDED COMPLAINT

James Williams (IDOC No. N-52706) ("**Plaintiff**"), by and through his attorneys, brings his Amended Complaint (the "**Complaint**") against Defendants Wexford Health Sources, Inc. ("**Wexford**"); Ghaliah Obaisi as the Independent Executor of the Estate of Dr. Saleh Obaisi, Dr. Saleh Obaisi, Dr. Charles Okezi, Dr. Alma Mia Martija, Dr. Louis Shicker, Nicholas Lamb, Randy Pfister, Guy Pierce, Jill Parrish, David Mansfield, and Sarah Johnson (collectively, "**Defendants**"), and in support of the Complaint states as follows:

1.  This is a civil action under 42 U.S.C. § 1983 for monetary damages and injunctive relief for Defendants' violations of Plaintiff's constitutional rights by their wanton and deliberate indifference to his serious medical needs, resulting in Plaintiff's ongoing, prolonged, and unnecessary pain and suffering. Defendants' continuing failures to respond adequately to Plaintiff's serious medical needs, from which he continues to suffer while in custody as an

inmate at Stateville Correctional Center ("**Stateville**"), constitute violations of Plaintiff's rights under the Eighth Amendment of the Constitution of the United States, made applicable to the states by the Fourteenth Amendment. U.S. CONST. amends. VIII and XIV. Plaintiff is entitled to damages and injunctive relief pursuant to 42 U.S.C. § 1983.

2. While in custody at Stateville, Plaintiff developed an increasingly large and painful hernia and has not been provided with adequate, timely care. Plaintiff has suffered, and continues to suffer, constant, unnecessary pain that interferes with his daily activities and deprives him of regular sleep.

3. The Defendants' ongoing failure to provide the prompt and appropriate treatment for Plaintiff's worsening, chronic, and severely painful condition during Plaintiff's incarceration at Stateville constitutes cruel and unusual punishment prohibited by the Eighth Amendment.

4. On information and belief, the constitutionally impermissible conduct of all Defendants discussed herein occurred pursuant to or in furtherance of policies, procedures, practices, or customs of Defendant Wexford, which contracts with the State of Illinois (the "**State**") for the provision of health care services to persons in the custody of the Illinois Department of Corrections (the "**IDOC**").

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because: (a) on information and belief, the Defendants reside or do business in the Northern District of Illinois (this "**District**") or else in the State; and (b) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

7.      Within the meaning of the Prison Litigation Reform Act, 42 U.S.C. § 1997 *et seq.*, Plaintiff has exhausted all administrative remedies available to him prior to bringing this 42 U.S.C. § 1983 civil rights lawsuit.

## PARTIES

8.      Plaintiff is currently an inmate at Stateville, an IDOC facility.

9.      Defendant Wexford is a foreign corporation incorporated in the State of Florida, with its principal place of business in Pittsburgh, Pennsylvania. Wexford is registered and authorized to do business as a foreign corporation in the State.

10.     At all times relevant, Defendant Wexford was in the business of providing health care and medical treatment to Stateville inmates, including Plaintiff, pursuant to a contract between Wexford and the IDOC.

11.     On information and belief, in its capacity as a contractor to the IDOC, Wexford promulgated rules, regulations, policies, and procedures for the medical screening, medical treatment, and overall medical care of inmates at Stateville, including Plaintiff. Wexford's policies were implemented by its own employees and by employees of the IDOC who were responsible for the medical care of inmates at Stateville.

12.     Dr. Saleh Obaisi was a physician licensed to practice medicine in the State and on information and belief was employed by Wexford as both a treating physician and as Medical Director at Stateville until his death in December 2017. On information and belief, at all times relevant, Dr. Obaisi was responsible for: (i) all healthcare provided by Wexford at Stateville; (ii) ensuring a timely and efficient response to inmates' healthcare needs; (iii) the creation, implementation, oversight, and supervision of policies, practices, and procedures regarding medical care at Stateville; (iv) training staff at Stateville to provide medical care to prisoners;

and (v) providing prisoners with access to medical care at Stateville. Dr. Obaisi is sued in his individual capacity.

13. Ghaliah Obaisi has been appointed Independent Executor of the Estate of Dr. Saleh Obaisi ("**Executor**") by Letter of Office entered on February 22, 2018 by the Illinois Circuit Court for the Eighteenth Judicial Circuit. Ghaliah Obaisi has been authorized to take possession and collect Dr. Obaisi's estate and do all acts required by law. Ghaliah Obaisi is sued only in her capacity as Executor.

14. Dr. Charles Okezi is a physician licensed to practice medicine in the State and is presently employed by Wexford as Acting Medical Director at Stateville. On information and belief, Dr. Charles Okezi is currently responsible for: (i) all healthcare provided by Wexford at Stateville; (ii) ensuring a timely and efficient response to inmates' healthcare needs; (iii) the creation, implementation, oversight and supervision of policies, practices, and procedures regarding medical care at Stateville; (iv) training staff at Stateville to provide medical care to prisoners; and (v) providing prisoners with access to medical care at Stateville. Dr. Charles Okezi is sued in both his official and individual capacities.

15. Dr. Alma Mia Martija is or was a physician licensed to practice medicine in the State and at certain relevant times was employed by Wexford as a treating physician at Stateville. Dr. Martija is sued in both her official and individual capacities.

16. On information and belief, Dr. Louis Schicker is or was a physician licensed to practice in the State and at certain relevant times is or was the IDOC Medical Director. Dr. Schicker has or had management and administrative responsibilities at Stateville, including responsibility for Plaintiff's care at Stateville. Dr. Shicker is or was in charge of IDOC policies

and procedures on the provision of medical care at all IDOC facilities. Dr. Shicker is sued in both his official and individual capacities.

17. On information and belief, at certain times relevant to this Complaint, Defendant Tarry Williams was the Warden of Stateville and was aware of Plaintiff's medical condition. Mr. Tarry Williams is sued in his individual capacity.

18. On information and belief, at certain times relevant to this Complaint, Defendant Nicholas Lamb was the Acting Warden of Stateville. Mr. Lamb is sued in his individual capacity.

19. On information and belief, from mid-November 2015 through March 2018, Randy Pfister was the Warden of Stateville. Mr. Pfister is currently Deputy Director of the Northern District for the IDOC. Mr. Pfister is sued in both his individual and official capacities.

20. On information and belief, from in or about March 2018, Guy Pierce has been the Warden of Stateville. Mr. Pierce is sued in both his individual and official capacities.

21. Jill Parrish is or was a Grievance Officer at Stateville at certain times relevant. Ms. Parrish is sued in both her official and individual capacities.

22. On information and belief, David Mansfield is or was a grievance officer at Stateville at certain times relevant. David Mansfield is sued in both his official and individual capacities.

23. On information and belief, Sarah Johnson is or was at certain times relevant a member or an employee of the IDOC Administrative Review Board (the "**ARB**"). Ms. Johnson is sued in both her individual and official capacities.

24. All Defendants in this action acted under color of state law to deprive Plaintiff of his constitutional rights, as discussed in greater detail below.

25. All individual Defendants in this action acted within the scope of their employment to deprive Plaintiff of his constitutional rights, as discussed in greater detail below.

## BACKGROUND

26. Plaintiff suffers from an increasingly large and painful hernia in his abdominal area.

**Hernias and Wexford's Hernia Policy**

27. A hernia develops when a weakness that forms in the abdominal wall enables part of the intestine (bowel) or another organ to protrude through it. ABDOMINAL HERNIA, Journal of American Medicine, https://jamanetwork.com/journals/jama/fullarticle/900171?resultClick=1 (last visited July 6, 2018).

28. A hernia is "reducible" when its contents (the bowel) can be pushed back into the abdomen. *Id.* However, if the hernia grows, it may become "incarcerated," meaning it cannot be pushed back into the abdomen. *Id.* If blood stops flowing through an incarcerated bowel, this results in strangulation, which is accompanied by pain, often with nausea, vomiting, or constipation. *Id.* A "strangulated" hernia is life-threatening and requires prompt emergency surgery. *Id.*

29. On information and belief, the only way to cure any hernia, as opposed to temporarily relieving its symptoms, is to repair it surgically.

30. On information and belief, at all times relevant, Wexford's official policy was and is to provide hernia surgery only to inmates with strangulated or incarcerated hernias, regardless of whether an inmate's reducible hernia was growing or causing the inmate severe pain.

**Plaintiff's Hernia**

31. In or about May 2015, Plaintiff noticed a knot protruding from the area above his navel. The knot caused, and continues to cause, extreme pain in Plaintiff's abdominal area.

32. On or about July 16, 2015, Defendant Dr. Martija examined Plaintiff, told him to lose some weight and further told him "Oh, it's okay. Don't worry about it. It is nothing." Dr. Martija told Plaintiff to return in three weeks. Dr. Martija did not give Plaintiff a diagnosis.

33. When Plaintiff protested and requested further testing and treatment, especially for pain, Dr. Martija grabbed his arm and pushed him toward the door of the examination room.

34. On July 17, 2015, Plaintiff submitted an emergency grievance, requesting that future medical appointments be scheduled only with Dr. Obaisi or "Dr. Williams," and not with Dr. Martija (the "**First Grievance**"). Acting Warden Lamb summarily denied the First Grievance on July 24, 2015, finding that an emergency was not substantiated. Lamb directed Plaintiff to submit his grievance in the "normal manner." A copy of the First Grievance is attached as **Exhibit A**.

35. On information and belief, Warden Tarry Williams became aware of Plaintiff's medical condition at or about this time.

36. On July 30 or 31, 2015, Plaintiff submitted a grievance substantially similar to the First Grievance to his Counselor, whose name is illegible (the "**Second Grievance**"). The Counselor responded that "[t]he original and a copy have been forwarded to the G/O. There is no need to send your copy to the G/O or the HCU. You will receive a final response from the G/O when the HCU responds to same." A copy of the Second Grievance is attached as **Exhibit B**.

37. Grievance Officer Jill Parrish responded to the Second Grievance on August 27, 2015 (the "**Response**"), stating that she had "no medical expertise," but recommending "No

action as grievant appears to be receiving appropriate medical care at this time." Acting Warden Lamb summarily concurred on September 1, 2015. A copy of the Response is attached as **Exhibit C**.

38. Plaintiff appealed the Response to the ARB on September 5, 2015 (the "**First Appeal**"). *See* Exhibit C, Response. As of the date of this Complaint, Plaintiff has not received a decision on the First Appeal.

39. In or about February or March 2016, Warden Pfister visited "D-House" where Plaintiff showed Warden Pfister the knot and expressed concern that he had not received medical treatment.

40. On a date in March 2016, Plaintiff saw Dr. Obaisi because the knot was getting larger and his pain was increasing. On information and belief, at that appointment, Dr. Obaisi first told Plaintiff that the knot was a hernia. Dr. Obaisi offered nonprescription pain medication and ordered Plaintiff a brace to keep the hernia from protruding. Plaintiff objected to regular use of pain medication and requested corrective surgery for his hernia.

41. On April 15, 2016, Plaintiff wrote a letter to Warden Pfister complaining of severe pain and asking for help. A copy of the letter is attached as **Exhibit D**.

42. On information and belief, Plaintiff did not receive the brace for approximately two months. When he did receive it, he wore it for at least two months, during which time the hernia nearly doubled in size and Plaintiff developed a rash.

43. On or about September 25, 2016, Plaintiff again saw Dr. Obaisi, seeking treatment for his hernia and for the rash caused by the brace. Dr. Obaisi offered ointment for the rash and ibuprofen, Tylenol, or Motrin as pain medication. Plaintiff again objected to regular use of pain medication and again requested surgery to correct the hernia.

44. On information and belief, after Plaintiff requested surgery, Dr. Obaisi told Plaintiff that Wexford's policy was not to send inmates for corrective hernia surgery. However, on information and belief, another inmate, Ramon Montague, went to the hospital for hernia surgery only a few days prior to Dr. Obaisi's statement.

45. On September 28, 2016, Plaintiff submitted a new emergency grievance (the "**Third Grievance**"), asking that he be sent to University of Illinois or St. Joseph's Hospital for hernia surgery. On October 14, 2016, Warden Pfister denied the Third Grievance after summarily finding that an emergency was not substantiated. A copy of the Third Grievance is attached as **Exhibit E**.

46. On information and belief, Plaintiff then submitted the Third Grievance to Defendant David Mansfield, who failed to respond.

47. Sometime in October or November 2016, Plaintiff discussed the hernia, the pain it caused him, and his desire for corrective surgery with Warden Pfister.

48. On November 15, 2016, Plaintiff wrote to Warden Pfister, explaining that Dr. Martija and Dr. Obaisi refused to treat his hernia properly, asking for help, and explaining that Plaintiff was in constant, overwhelming pain that prevented him from sleeping or engaging in normal daily activities. A copy of the letter is attached as **Exhibit F**.

49. On January 11, 2017, Plaintiff submitted another emergency grievance (the "**Fourth Grievance**") requesting hernia surgery. The Fourth Grievance was summarily denied on January 24, 2017. A copy of the Fourth Grievance is attached as **Exhibit G**.

50. Plaintiff appealed the denial of the Fourth Grievance to the ARB (the "**Second Appeal**").

51. On information and belief, at some point before February 17, 2017, Plaintiff wrote to the ARB about his unanswered First Appeal, explaining that the ARB's lack of response prevented him from seeking relief in court, due to the requirement of exhaustion of remedies. A copy of the undated letter is attached as **Exhibit H**.

52. The ARB sent Plaintiff a Return of Grievance or Correspondence (the "**Return**") dated February 17, 2017. Defendant Sarah Johnson summarily denied the Second Appeal, regarding Plaintiff's unanswered hernia grievances as well as his ongoing hernia issues, on the basis of "misdirection" and instructed Plaintiff to contact his grievance officer. Ms. Johnson further directed Plaintiff to "contact healthcare for any current medical issues." A copy of the Return is attached as **Exhibit I**.

53. On July 7, 2017, Plaintiff filed his original complaint.

54. As of the date of this Complaint, while Dr. Charles Okezi is Acting Medical Director at Stateville, Plaintiff still has not been scheduled for or received hernia surgery, although the hernia continues to grow and to cause him constant pain.

## COUNT I

**Violation of 42 U.S.C. § 1983: Cruel and Unusual Punishment
Inadequate Medical Treatment and Indifference to Medical Condition:
Refusal to Provide Medical Treatment
[Defendants Dr. Obaisi, Dr. Okezi, Dr. Martija,
Dr. Schicker, Acting Warden Lamb, Warden Williams,
Warden Pfister, Warden Pierce, Wexford]**

55. Plaintiff repeats and realleges the allegations of paragraphs 1 through 51 as though fully set forth herein.

56. As an inmate in the custody of the IDOC, Plaintiff has a right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

57. Defendants' treatment of Plaintiff, or lack thereof, constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment. U.S. CONST. amends. VIII and XIV.

58. The right to be free from cruel and unusual punishment is a clearly established constitutional right of which any reasonable person would have known.

59. Plaintiff's serious medical condition is so obvious that even a lay person would perceive the need for surgical correction.

60. Plaintiff's medical condition is so objectively serious that the failure to provide the needed care constitutes a constitutional deprivation.

61. On information and belief, the standard treatment for, and only long-term solution to, hernias is surgical repair. Without the required surgery, Plaintiff's hernia has grown larger and more painful, and, upon information and belief, is now much more difficult to repair. The hernia interferes with Plaintiff's sleep and other basic daily activities such as sneezing, coughing, laughing, or using the bathroom.

62. Defendants Dr. Obaisi, Dr. Okezi, Dr. Martija, Warden Williams, Acting Warden Lamb, Warden Pfister, Warden Pierce, and Wexford possess or possessed actual or constructive knowledge of Plaintiff's serious medical condition. By refusing to treat Plaintiff or by condoning or encouraging, whether by individual act or by policy or practice, the frequent refusals to treat Plaintiff, these Defendants consciously disregarded and demonstrated deliberate indifference to Plaintiff's serious and painful medical condition.

63. Responsibility for inadequate medical care can be inferred from a defendant's title and position within in a prison healthcare system.

64. In his capacity as IDOC Medical Director, Defendant Dr. Schicker possesses actual or constructive knowledge of Plaintiff's serious medical condition. By refusing to treat Plaintiff or by condoning or encouraging, whether by individual act or by policy or practice, the frequent refusals to treat Plaintiff, Dr. Schicker consciously disregarded and demonstrated deliberate indifference to Plaintiff's serious and painful medical condition.

65. Defendants to this Count I had and have the authority to send Plaintiff for surgery to repair his worsening hernia but have failed to do so out of deliberate indifference.

66. As a direct and proximate result of the Defendants' violations of Plaintiff's Eighth Amendment rights, Plaintiff suffered and continues to suffer harm, including, without limitation, needlessly prolonged pain and suffering and continuing growth of the hernia. Plaintiff is therefore entitled to injunctive relief requiring Defendants forthwith to provide the necessary corrective hernia surgery and all appropriate follow-up care; and to compensatory and punitive damages pursuant to 42 U.S.C. § 1983.

67. Plaintiff joins Defendant Wexford to this count under a theory of *respondeat superior* liability. Plaintiff's claim against Wexford in this Count I is warranted by a nonfrivolous argument for a change to existing law or the establishment of new law as discussed in *Shields v. Ill. Dep't of Corrections*, 746 F.3d 782, 790-96 (7th Cir. 2014) and *Perez v. Fenoglio*, 792 F.3d 768, 780 n. 5 (7th Cir. 2015).

WHEREFORE, Plaintiff James Williams requests that this Court enter judgment in his favor and against the Defendants to this Count I as follows:

A. Entering injunctive relief against each Defendant to this Count I, requiring each Defendant forthwith to provide the necessary corrective hernia surgery and all appropriate follow-up care to Plaintiff;

B. Awarding compensatory damages to Plaintiff from all Defendants to this Count I, jointly and severally, in an amount to be determined at trial;

C. Awarding punitive damages to Plaintiff from all Defendants to this Count I, jointly and severally, in an amount to be determined at trial;

D. Awarding Plaintiff his costs and reasonable attorneys' fees pursuant to 42 U.S.C. §1988; and

E. Granting such other and further relief as this Court deems just and proper.

## COUNT II
### Violation of 42 U.S.C. § 1983: Cruel and Unusual Punishment
### Inadequate Medical Treatment and Indifference to Medical Condition:
### Failure to Diagnose or Treat Adequately
### [Defendants Dr. Obaisi, Dr. Okezi, Dr. Martija, Wexford]

68. Plaintiff repeats and realleges the allegations of paragraphs 1 through 64 as though fully set forth herein.

69. Defendants Dr. Obaisi, Dr. Okezi, Dr. Martija, and Wexford possess or possessed actual or constructive knowledge of the Plaintiff's serious medical condition.

70. Dr. Martija's mere summary examination in July 2015, without any diagnosis other than "it's nothing," followed by inadequate treatment or no treatment at all demonstrates a conscious disregard for and deliberate indifference to Plaintiff's serious medical condition.

71. Dr. Obaisi's examination in March 2016 at least provided Plaintiff with a diagnosis, but the subsequent failures to treat the hernia adequately demonstrate a conscious disregard for and deliberate indifference to Plaintiff's serious medical condition.

72. Dr. Okezi's ongoing failure to provide adequate treatment for Plaintiff's hernia demonstrates a conscious disregard for and deliberate indifference to Plaintiff's serious medical condition.

73. Defendants to this Count II had and have the authority to send Plaintiff for surgery to repair his worsening hernia but have failed to do so out of deliberate indifference.

74. As a direct and proximate result of the Defendants' violations of Plaintiff's Eighth Amendment rights, Plaintiff suffered and continues to suffer harm, including, without limitation, needlessly prolonged pain and suffering and continuing growth of the hernia. Plaintiff is therefore entitled to injunctive relief requiring Defendants forthwith to provide the necessary corrective hernia surgery and all appropriate follow-up care; and compensatory and punitive damages pursuant to 42 U.S.C. § 1983.

75. Plaintiff joins Defendant Wexford to this count under a theory of *respondeat superior* liability. Plaintiff's claim against Wexford in this Count II is warranted by a nonfrivolous argument for a change to existing law or the establishment of new law as discussed in *Shields v. Ill. Dep't of Corrections*, 746 F.3d 782, 790-96 (7th Cir. 2014) and *Perez v. Fenoglio*, 792 F.3d 768, 780 n. 5 (7th Cir. 2015).

WHEREFORE, Plaintiff James Williams requests that this Court enter judgment in his favor and against the Defendants to this Count II as follows:

A. Entering injunctive relief against each Defendant to this Count II, requiring each Defendant forthwith to provide the necessary corrective hernia surgery and all appropriate follow-up care to Plaintiff;

B. Awarding compensatory damages to Plaintiff from all Defendants to this Count II, jointly and severally, in an amount to be determined at trial;

C. Awarding punitive damages to Plaintiff from all Defendants to this Count II, jointly and severally, in an amount to be determined at trial;

D. Awarding Plaintiff his costs and reasonable attorneys' fees pursuant to 42 U.S.C. §1988; and

E. Granting such other and further relief as this Court deems just and proper.

## COUNT III
### Violation of 42 U.S.C. § 1983: Cruel and Unusual Punishment Inadequate Medical Treatment and Indifference to Medical Condition: Constitutionally Infirm Polices, Practices, or Customs
### [Defendants Wexford, Dr. Obaisi, Dr. Okezi, Dr. Martija, Dr. Schicker, Acting Warden Lamb, Warden Williams, Warden Pfister, Warden Pierce, Wexford]

76. Plaintiff repeats and realleges the allegations of paragraphs 1 through 72 as though fully set forth herein.

77. On information and belief, Defendants to this Count III maintain policies, practices, or customs preventing or discouraging physicians employed by Wexford or acting in connection with Wexford from referring Stateville inmates, including Plaintiff, for hernia surgery and other follow-up medical care, resulting in continuing and repeated failures to discover or adequately address the pain and suffering caused by hernias.

78. On information and belief, Wexford maintains or maintained the following written policy with regard to hernias:

> Based upon the current medical literature regarding the natural history of abdominal hernias, their repair and recurrence, it is Wexford's position that: (1) Patients with stable abdominal wall hernias are not, in general, candidates for herniorrhaphy [hernia surgery] and will be monitored and treated with appropriate non-surgical therapy, (2) Patients with incarcerated or strangulated abdominal wall hernias are candidates for herniorrhaphy and will be referred urgently for surgical evaluation, and (3) Hernias which do not impact on an inmate's ADLs ["Activities of Daily Living"] in this setting would not be consideration for repair [sic]. Decisions regarding patient suitability for consideration of abdominal wall herniorrhaphy must be made on a case-by-case basis. These recommendations are intended only as a guide for the site physician and are not intended to replace hands-on clinical judgment.

See, e.g., *Wilder v. Wexford Health Sources, Inc.*, 2015 WL 2208440 at *2 (N.D. Ill., May 5, 2015) (quoting the policy); see also *Torres v. Wexford Health Sources, Inc.*, 2016 WL 5373060

at *2 (N.D. Ill., Sept. 26, 2016) (same); *Heard v. Illinois Dept. of Corrections*, 2012 WL 832566 at *2 (N.D. Ill., March 12, 2012) (same).

79. To the extent that Defendants do not maintain formal policies regarding the deficiencies alleged in this Count III, the deficiencies exist as widespread practices that, although informal, are so permanent and well-settled as to constitute customs or usages having the force of law, as demonstrated by the series of malfeasances and omissions set forth in greater detail above. At all relevant times, Defendants had actual or constructive knowledge of those deficiencies and were deliberately indifferent to the known or obvious consequences of those deficiencies.

80. To the extent that the deficiencies alleged in this Count III affected only Plaintiff and no others, the unconstitutional consequences of those deficiencies were and are so patently obvious that Defendants remain liable for Plaintiff's injuries.

81. The deficiencies alleged in this Count III are a direct cause of or the moving force behind Plaintiff's constitutional injuries.

82. Defendants to this Count III had and have the authority to send Plaintiff for surgery to repair his worsening hernia but have failed to do so out of deliberate indifference.

83. As a direct and proximate result of the Defendants' violations of Plaintiff's Eighth Amendment rights, Plaintiff suffered and continues to suffer harm, including, without limitation, needlessly prolonged pain and suffering and continuing growth of the hernia. Plaintiff is therefore entitled to injunctive relief requiring Defendants forthwith to provide the necessary corrective hernia surgery and all appropriate follow-up care; and compensatory and punitive damages pursuant to 42 U.S.C. § 1983.

WHEREFORE, Plaintiff James Williams requests that this Court enter judgment in his favor and against the Defendants to this Count III as follows:

A. Entering injunctive relief against each Defendant to this Count III, requiring each Defendant forthwith to provide the necessary corrective hernia surgery and all appropriate follow-up care to Plaintiff;

B. Awarding compensatory damages to Plaintiff from all Defendants to this Count III, jointly and severally, in an amount to be determined at trial;

C. Awarding punitive damages to Plaintiff from all Defendants to this Count III, jointly and severally, in an amount to be determined at trial;

D. Awarding Plaintiff his costs and reasonable attorneys' fees pursuant to 42 U.S.C. §1988; and

E. Granting such other and further relief as this Court deems just and proper.

**COUNT IV**
**Violation of 42 U.S.C. §1983: Cruel and Unusual Punishment**
**Inadequate Medical Treatment and Indifference to Medical Condition:**
**Refusal to Consider Grievances and Inadequate Grievance Policies or Practices**
**[Defendants Dr. Schicker, Acting Warden Lamb, Warden Williams,**
**Warden Pfister, Warden Pierce, Parrish, Mansfield, and Johnson]**

84. Plaintiff repeats and realleges the allegations of paragraphs 1 through 80 as though fully set forth herein.

85. Defendants Lamb, Williams, Pfister, Parrish, Mansfield, and Johnson possessed actual knowledge of Plaintiff's serious medical condition. On information and belief, Defendants Pierce and Dr. Schicker possess actual or constructive knowledge of Plaintiff's serious medical condition.

86. Defendants consciously disregarded and were deliberately indifferent to Plaintiff's serious medical condition. Defendants': (i) refusal to consider Plaintiff's grievances and appeals; (ii) summary disposal of those grievances and appeals on the slightest technicality or pretext; and (iii) failure to conduct a reasonable inquiry into the merits of the grievances and

appeals at best condones and encourages systematic delay and at worst prevents Plaintiff from receiving the surgery necessary to relieve his continuing pain.

87. Defendants Dr. Schicker, Lamb, Williams, Pfister, and Pierce had and have the authority to send Plaintiff for surgery to repair his worsening hernia but have failed to do so out of deliberate indifference.

88. Defendants Parrish, Mansfield, and Johnson had or have the authority at the least to request further review of Plaintiff's Grievances and Appeals and at best to obtain authority to send Plaintiff for surgery to repair his worsening hernia but have failed to do so out of deliberate indifference.

89. As a direct and proximate result of the Defendants' violations of Plaintiff's Eighth Amendment rights, Plaintiff suffered and continues to suffer harm, including, without limitation, needlessly prolonged pain and suffering and continuing growth of the hernia. Plaintiff is therefore entitled to injunctive relief requiring Defendants forthwith to provide the necessary corrective hernia surgery and all appropriate follow-up care; and compensatory and punitive damages pursuant to 42 U.S.C. § 1983.

WHEREFORE, Plaintiff James Williams requests that this Court enter judgment in his favor and against the Defendants to this Count IV as follows:

A. Entering injunctive relief against each Defendant to this Count IV, requiring each Defendant, to the extent that he or she has authority, forthwith to provide the necessary corrective hernia surgery and all appropriate follow-up care to Plaintiff;

B. Awarding compensatory damages to Plaintiff from all Defendants to this Count IV, jointly and severally, in an amount to be determined at trial;

C. Awarding punitive damages to Plaintiff from all Defendants to this Count IV, jointly and severally, in an amount to be determined at trial;

D. Awarding Plaintiff his costs and reasonable attorneys' fees pursuant to 42 U.S.C. §1988; and

E. Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

90. Plaintiff demands a trial by jury.

Dated: Respectfully submitted,

JAMES WILLIAMS

/s/_____Karen V. Newbury_____
One of his attorneys

Joseph D. Frank (IL 6216085)
Karen V. Newbury (IL 6237765)
FrankGecker LLP
325 North LaSalle Street, Suite 625
Chicago, Illinois 60654
Tel. (312) 276-1400
Fax. (312) 276-0035
jfrank@fgllp.com
knewbury@fgllp.com