**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JAMES WILLIAMS, | )<br>) |
| Plaintiff, | )<br>) |
| | ) No. 17-cv-05076 |
| v. | )<br>) Judge Andrea R. Wood |
| WEXFORD HEALTH SOURCES, INC., et al., | )<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff James Williams first noticed a protrusion in his abdominal area around May 2015, while serving a life sentence at Stateville Correctional Center ("Stateville"). Williams eventually learned that the painful protrusion was a hernia. Over the next several years, he went to a number of prison officials at Stateville and medical personnel employed by Wexford Health Sources, Inc. ("Wexford") requesting treatment. In August 2018, more than three years after he first experienced symptoms, Williams finally underwent hernia surgery. He has brought this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Wexford; Ghaliah Obaisi as Independent Executor of the Estate of Dr. Saleh Obaisi (deceased);[1] Wexford physicians Christian Okezie, Marlene Henze, Alma Mia Martija, and Louis Shicker; former Stateville Wardens Tarry Williams, Nicholas Lamb, Randy Pfister, and Guy Pierce; Grievance Officers Jill Parrish and David Mansfield; and Sarah Johnson, a member of the Illinois Department of Corrections ("IDOC") Administrative Review Board ("ARB"). Williams alleges that all Defendants violated his Eighth Amendment rights by showing deliberate indifference to his serious medical needs.

---

[1] Ghaliah Obaisi is sued only in her capacity as independent executor of the estate of Dr. Saleh Obaisi. (Second Am. Compl. ("SAC") ¶ 13, Dkt. No. 95.)

Defendants collectively have filed three motions to dismiss Williams's Second Amended Complaint ("SAC") under Federal Rule of Civil Procedure 12(b)(6). (Dkt. Nos. 110, 111, 115.) Defendants Parrish, Mansfield, and Johnson (collectively, "Grievance Defendants") and Defendants Williams, Lamb, Pfister, and Pierce (collectively, "Warden Defendants") argue that the Court should dismiss the claims against them because Williams has failed to allege adequately that they were personally involved in any unconstitutional conduct. Defendants Wexford, Obaisi, Okezie, Henze, and Martija (collectively, "Wexford Defendants") have filed a partial motion to dismiss, contending that the Court should dismiss any claims against Wexford that are based exclusively on the acts of its employees and dismiss as redundant all official capacity claims against Obasi, Okezie, Henze, and Martija (collectively, "Wexford Individual Defendants").[2] For the reasons explained below, the Court grants in part and denies in part the Warden Defendants' and the Grievance Defendants' motions to dismiss. The Court also grants the Wexford Defendants' partial motion to dismiss.

## BACKGROUND

For purposes of Defendants' motions to dismiss, the Court accepts as true the well-pleaded facts in the SAC and views them in the light most favorable to Williams, as the nonmoving party. *See Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826–27 (7th Cir. 2015). The Court also considers documents referenced in the SAC that are central to Williams's claims. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). The SAC alleges as follows.

In May 2015, Williams first complained about a knot protruding above his navel to Dr. Obaisi, who told him that his pain and swelling were "nothing." (SAC ¶¶ 37–38.) On July 16, 2015, Williams saw Dr. Martija. (*Id.* ¶ 39.) She, too, advised Williams that there was nothing

---

[2] Defendant Louis Shicker did not join the Wexford Defendants' motion to dismiss and instead filed an answer to Williams's SAC. (*See* Dkt. No. 112.)

wrong with him, apart from needing to lose weight, and that he should come back in three weeks if the problem had not improved. (*Id.*) Williams filed an emergency grievance on July 17, 2015 ("July 2015 Emergency Grievance") regarding his appointment with Dr. Martija. (*Id.* Ex. A, Dkt. No. 95-1.) Lamb, then Stateville's Acting Warden, denied Williams's grievance as a nonemergency and told him to file it in the normal manner. (SAC ¶ 41.) Williams subsequently filed substantially the same grievance as a nonemergency ("July 2015 Nonemergency Grievance"). (*Id.* Ex. B, 95-2.) Grievance Officer Parrish denied the nonemergency grievance on August 27, 2015, noting that Williams had recently been back to see other medical professionals and appeared to be getting appropriate medical treatment. (*Id.* Ex. C, Dkt. No. 95-3.) Williams appealed Parrish's response to the ARB on September 5, 2015. (SAC ¶ 45.)

On November 3, 2015, Dr. Shicker diagnosed Williams's growth as a hernia (*id.* ¶ 47), a condition in which a weakness in the abdominal wall allows part of the intestine or another organ to protrude through it. (*Id.* ¶ 33.) Dr. Shicker prescribed Williams a brace to keep the hernia in place. (*Id.* ¶ 47.) Williams received his brace two months later; as he wore it over the next two months, he developed a rash and the size of his hernia nearly doubled. (*Id.* ¶ 51.) When Deputy Director Pfister,[3] who was then serving as Stateville's Warden, visited Williams's housing unit in February or March 2016, Williams showed him the hernia in person. (*Id.* ¶ 49.) On April 15, 2016, Williams sent Deputy Director Pfister a letter informing him that prison medical staff had still not treated his hernia properly and that he was in severe pain. (*Id.* Ex. E, Dkt. No. 95-5.)

On September 25, 2016, Dr. Obaisi offered Williams nonprescription pain medication for his hernia, which Williams refused. (SAC ¶ 53.) When Williams requested surgery, Dr. Obaisi told him that Wexford's policy was not to provide corrective hernia surgeries to inmates. (*Id.*

---

[3] Pfister was the Warden of Stateville from November 2015 through March 2018. (SAC ¶ 20.) He is now the Deputy Director of the Northern District for the IDOC. (*Id.*)

3

¶ 54.) Three days later, Williams filed another emergency grievance about his latest appointment with Dr. Obaisi ("September 2016 Grievance"), requesting that the prison send him to the hospital for surgery. (*Id.* Ex. F, Dkt. No. 95-6.) Deputy Director Pfister denied his grievance as a nonemergency on October 14, 2016, at which point Williams resubmitted it through the normal channel to Grievance Officer Mansfield. (SAC ¶¶ 55–56.) In October or November 2016, Williams discussed his hernia again with Deputy Director Pfister (*id.* ¶ 57), and on November 15, 2016, he wrote Deputy Director Pfister a second letter complaining about his continual pain and the medical staff's refusal to treat him. (*Id.* Ex. G, Dkt. No. 95-7.)

On January 11, 2017, Williams submitted another emergency grievance ("January 2017 Grievance") asserting that he had been in pain for two years and that the prison's doctors had refused to offer him anything beyond a brace and nonprescription pain medication. (*Id.* Ex. H, Dkt. No. 95-8.) When that grievance was denied, he appealed it to the ARB. (SAC ¶¶ 60–61.) Around that time, Williams also sent a letter to the ARB outlining the grievances he had filed up to that point. (*Id.* Ex. I, Dkt. No. 95-9.) ARB Member Johnson denied his appeal on February 17, 2017, instructing him to contact his counselor and prison medical staff. (SAC ¶ 63.) Williams subsequently filed suit in this Court on July 7, 2017, followed by his first amended complaint on July 20, 2018. (Dkt. Nos. 1, 15.) On August 23, 2018, he finally received surgery to treat his hernia. (SAC ¶ 29.) Williams filed his SAC on March 26, 2019, requesting compensatory damages and injunctive relief for postsurgical treatment. (*Id.* ¶¶ 80, 90, 99, 105.)

The SAC alleges that all Defendants were deliberately indifferent to his serious medical condition in violation of his constitutional right to be free from cruel and unusual punishment. U.S. Const. amend. VIII; *see also Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). Specifically, Williams alleges that: (1) the Warden Defendants and Wexford Defendants refused

4

to provide him with medical treatment for his hernia (Count I); (2) the Wexford Defendants failed to diagnose or treat his hernia adequately (Count II); (3) the Warden Defendants and Wexford Defendants maintain or maintained a constitutionally infirm policy of refusing to refer prisoners for surgery until their hernias become incarcerated (meaning that the hernia can no longer be pushed back into the abdomen) or strangulated (meaning that the hernia is life-threatening and requires immediate surgery) (Count III); and (4) the Warden Defendants, Grievance Defendants, and Wexford Individual Defendants refused to consider Williams's grievances about his medical care and maintained inadequate grievance policies or practices (Count IV).

## DISCUSSION

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Detailed factual allegations are not required at this stage, but the complaint must contain enough detail to give defendants fair notice of the nature of the claims against them. *Twombly*, 550 U.S. at 554–56. The plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). When analyzing a Rule 12(b)(6) motion, the Court must "construe [the complaint] in the light most favorable to the plaintiffs, accepting as true all well-pleaded facts alleged and drawing all permissible inferences in their favor." *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 700 (7th Cir. 2014).

A prisoner seeking to state a claim for deliberate indifference to his serious medical needs must establish that he suffered "an objectively serious medical condition" and "an official's deliberate indifference to that condition." *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011).

5

Defendants do not dispute that a hernia is an objectively serious medical condition, so that element of Williams's claim is not at issue here. Instead, at issue is whether any Defendant acted with deliberate indifference to that condition. To establish a prison official's deliberate indifference, a plaintiff must show that the official "acted with a sufficiently culpable state of mind." *Id.* at 751 (internal quotation marks omitted). "A prison official acts with a sufficiently culpable state of mind when he knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk." *Id.* "The deliberate indifference standard reflects a mental state somewhere between the culpability poles of negligence and purpose, and is thus properly equated with reckless disregard." *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015).

    **I.**    **The Warden Defendants' Motion to Dismiss**

The Warden Defendants move to dismiss Counts I, III, and IV against them, arguing that as nonmedical professionals, they lacked the personal involvement and knowledge required to be held liable for deliberate indifference.

Government officials acting in a supervisory capacity, such as wardens, may be held liable under § 1983 only for their own misconduct, not the misconduct of others. *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015). Moreover, nonmedical prison officials are generally justified in relying upon the expertise of prison medical staff. *Arnett*, 658 F.3d at 755. Nonetheless, supervisors with no medical knowledge may be found deliberately indifferent to a risk to a prisoner's safety if those supervisors are aware of unconstitutional conduct on the part of medical professionals and decline to intervene. *Perez*, 792 F.3d at 781–82 (citing *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996)).

### A. Claims Against Warden Lamb

Williams alleges that Warden Lamb summarily denied Williams's July 2015 Emergency Grievance, essentially finding that there was no emergency, and also that on September 1, 2015, Warden Lamb concurred with Grievance Officer Parrish's denial of Williams's July 2015 Nonemergency Grievance. (SAC ¶¶ 41, 44.) Both grievances primarily contained information about Williams's appointment with Dr. Martija on July 16, 2015, when she told him the growth in his abdomen was "nothing" and that he should come back in a few weeks to see if it had improved. (*Id.* Exs. A, B.) In Parrish's denial of the July 2015 Nonemergency Grievance, she indicated that she had reviewed Williams's medical record and learned that he was seen by a nurse on August 6, 2015 and a physician's assistant on August 12, 2015, that labs had been ordered on his behalf; and that he was scheduled to come back for a follow-up appointment within a few weeks. (*Id.* Ex. C.) When Warden Lamb concurred with Parrish's response, Williams appealed his July 2015 Nonemergency Grievance to the ARB. (SAC ¶ 45.)

Based on these allegations, Williams fails to state a claim against Warden Lamb. His initial denial of Williams's July 2015 Emergency Grievance does not support a plausible inference of deliberate indifference because Warden Lamb merely directed Williams to submit his request again in the typical manner. Williams has not alleged any facts suggesting that it was unreasonable to treat his grievance as a nonemergency at the time or that Warden Lamb was not entitled to delegate the grievance to another official. *See Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005) (finding no deliberate indifference where a grievance counselor reviewed the plaintiff's complaint and referred it to other prison officials). Absent any such allegations , the Court finds that Williams has not adequately pleaded that Warden Lamb was deliberately indifferent in directing the complaint to Stateville's grievance officers.

7

Warden Lamb's concurrence with Parrish's denial of the July 2015 Nonemergency Grievance also falls short of suggesting deliberate indifference. That grievance focused on one doctor's appointment Williams had with Dr. Martija, which is not sufficient to give Warden Lamb notice that there was an ongoing problem. Moreover, in reviewing the denial, Warden Lamb would have seen the grievance officer's notes explaining that she looked into the complaint and found that Williams had seen other medical professionals twice since he filed the grievance. In light of that update, it was reasonable for Warden Lamb to concur with Parrish that the grievance had been resolved. Nonmedical prison administrators are generally entitled to presume that inmates who are being treated by medical professionals are in capable hands. *Arnett*, 658 F.3d at 755. None of the allegations in the SAC suggest that, at that time, Warden Lamb had reason to believe that the prison's medical staff was continuing to mistreat or inadequately treat Williams, such that the Eighth Amendment would require him to intervene.

In sum, Williams has failed to plead facts that plausibly suggest Warden Lamb was deliberately indifferent to his serious medical needs. Counts I, III, and IV against Warden Lamb are dismissed

### B. Claims Against Warden Williams

Williams alleges only that Warden Williams became aware of his medical condition around July 2015.[4] (SAC ¶¶ 41–42.) The Court finds this allegation insufficient to survive a motion to dismiss. While detailed allegations are not required to state a claim successfully, Williams has not pleaded sufficient information to provide Warden Williams fair notice of the nature of the claims against him. *See Twombly*, 550 U.S. at 554–56. For instance, Williams fails to explain how and what Warden Williams learned about Williams's medical condition and care.

---

[4] It is not clear from the pleadings when Warden Tarry Williams took over. Williams alleges only that "at certain times relevant to this Complaint, Defendant Tarry Williams was the Warden of Stateville and was aware of Plaintiff's medical condition." (SAC ¶ 18.)

The bare assertion that Warden Williams became aware of Williams's medical condition around July 2015, without more, fails to allege plausibly that Warden Williams was personally involved in the denial of medical care, as is required to state a § 1983 claim. *Arnett*, 658 F.3d at 750; *see also Young v. Obaisi*, No. 15-cv-2412, 2015 WL 8013437, at *4 (N.D. Ill. Dec. 7, 2015) (finding that the plaintiff's assertions that the defendant wardens "knew or should have known" about his injury and inadequate treatment were insufficient to establish the wardens' knowledge or personal involvement). Accordingly, the Court dismisses Counts I, III, and IV against the Warden.

### C. Claims Against Deputy Director Pfister in his Individual Capacity

Williams has sued Deputy Director Pfister in both his individual and official capacities. (SAC ¶ 20.) The Court first considers the individual-capacity claim.

Williams alleges that in February or March 2016, he showed Deputy Director Pfister his hernia while Pfister, who was then Stateville's Warden, was visiting Williams's housing unit. (SAC ¶ 49.) In April 2016, Williams wrote Deputy Director Pfister a letter, complaining that he was in severe pain and asking for help. (*Id.* ¶ 52; *id.* Ex. E.) Williams then submitted the September 2016 Grievance to Deputy Director Pfister. In it, Williams requested surgery and stated that he had been suffering from a hernia in his stomach for fifteen months, that the condition was getting continuously worse and growing in size, and that at his last medical appointment, Dr. Obaisi told him all he could do to help was provide ibuprofen or other nonprescription pain medication. (*Id.* Ex. F.) On October 14, 2016, Deputy Director Pfister denied the September 2016 Grievance as a nonemergency. (SAC ¶ 55). According to Williams, in October or November 2016, he again discussed his continuing pain and desire for hernia surgery with Deputy Director Pfister (*Id.* ¶ 57). Then, on November 15, 2016, Williams wrote Deputy Director Pfister another letter asking for help, stating that his constant stomach pain prevented him from sleeping or

9

engaging in other daily activities and that the prison doctors refused to treat him. (*Id.* ¶ 58; *id.* Ex. G.)

The Warden Defendants concede that Deputy Director Pfister was aware of Williams's grievances regarding his medical care but contend that the alleged facts still fail to establish his deliberate indifference. The Warden Defendants cite *Forbes v. Edgar*, for the proposition that prisoners are not entitled to the exact care they want or the best care possible, only to care sufficient to address a substantial risk of harm. 112 F.3d 262, 267 (7th Cir. 1997). But here, Williams is not claiming that he was entitled to the best care; rather, he contends that his pain was needlessly prolonged because Deputy Director Pfister deliberated ignored his complaints. This case is similar to *Gonzalez v. Feinerman*, in which the Seventh Circuit held that a plaintiff who had complained to prison officials for two years of debilitating pain due to his hernia and in response received minimal or no medication to manage his pain, successfully stated a claim against the defendant physicians. 663 F.3d at 314. The *Gonzalez* court found that a reasonable factfinder could conclude that the defendants were deliberately indifferent to the plaintiff's serious medical needs by delaying his hernia surgery. *Id.* at 314–15. Similarly, Williams's allegation that Deputy Director Pfister was responsible for delaying his hernia surgery for years despite his ongoing pain is sufficient to support his claim that he received constitutionally inadequate medical care.

The Warden Defendants next argue that because Williams continued to be seen by prison medical personnel, Deputy Director Pfister, as a nonmedical administrator, was entitled to defer to their expertise and assume that they were adequately handling Williams's medical condition. The Warden Defendants point to *Johnson v. Doughty*, 433 F.3d 1001 (7th Cir. 2006), another case involving a prisoner suffering from a hernia, in which the Seventh Circuit affirmed summary

judgment in favor of a warden who was aware of the plaintiff's complaints, followed up with the prison's medical professionals to ensure that the plaintiff was getting care, and then reasonably relied on those professionals in determining that the plaintiff did not need any additional care. The *Johnson* court explained that nonmedical staff are typically exempt from liability "[e]xcept in the unusual case where it would be evident to a layperson that a prisoner is receiving inadequate or inappropriate treatment." *Id.* at 1011 (quoting *Bond v. Aguinaldo*, 228 F. Supp. 2d 918, 920 (N.D. Ill. 2002)).

*Johnson* is inapposite here, however. In that case, the Seventh Circuit was reviewing the district court's grant of summary judgment based on a finding that the undisputed facts showed that the warden had taken the plaintiff's complaints seriously and reasonably relied upon doctors' recommendations regarding the plaintiff's care. *Id.* at 1010. The present case is before the Court at the motion to dismiss stage. At this point in the case, the Court considers only whether Williams has pleaded sufficient facts to raise a plausible inference that Deputy Director Pfister was deliberately indifferent to his serious medical needs. The SAC meets that threshold. Williams alleges that he showed Deputy Director Pfister his hernia in person, and over the next eight or nine-month period, he wrote Pfister a number of letters and submitted grievances to him explaining that he still had not received sufficient care and was in constant pain. Moreover, the Warden Defendants acknowledge that Deputy Director Pfister was aware of Williams's numerous complaints. Regardless of whether he was a medical professional, Williams's allegations support a plausible inference that Deputy Director Pfister knew Williams had been in pain for months without receiving effective treatment.

Because Williams has pleaded facts sufficient to suggest that Deputy Director Pfister was deliberately indifferent to his inadequate medical care, Counts I, III, and IV asserted against Pfister in his individual capacity may proceed.

### D. Claims Against Warden Pierce in his Individual Capacity

Williams has also sued Warden Pierce in both his official and individual capacity. (*Id.* ¶ 21.) With respect to the individual-capacity claim, Williams alleges simply that Warden Pierce, who took over in March 2018, knew about Williams's medical condition and the prison doctors' refusal to treat him. (SAC ¶¶ 21, 76.) But as with the allegations against Warden Williams, the SAC fails to include sufficient facts to state a claim against Warden Pierce. The bare allegation that Warden Pierce knew about Williams's condition and the medical staff's refusal to treat him, without any context as to how Pierce learned of those facts or to what extent he understood them, is not enough to establish Pierce's personal involvement. *See Young*, 2015 WL 8013437, at *4. Accordingly, Williams's claims against Warden Pierce in his individual capacity are dismissed.

### E. Claims Against Pfister and Pierce in Their Official Capacities

In addition to his individual-capacity claims for damages, Williams seeks injunctive relief from Pfister, in his official capacity as the current Deputy Director of the Northern District for the IDOC, and Pierce, in his official capacity as the current Warden at Stateville, seeking to ensure that he obtains all appropriate follow-up care from his surgery. To state a claim for injunctive relief against state officials, a plaintiff must plead facts sufficient to allege an ongoing violation of federal law and must request some prospective relief. *Amundson ex rel. Amundson v. Wis. Dep't of Health Servs.*, 721 F.3d 871, 873 (7th Cir. 2013). As the Seventh Circuit has made clear, a plaintiff seeking injunctive relief does not need to plead any specific involvement against a defendant to maintain a claim against him in his official capacity. *See Gonzalez*, 663 F.3d at 315.

Prison officials, such as wardens, are appropriate defendants when they "would be responsible for ensuring that any injunctive relief is carried out." *Id.*

The Warden Defendants argue that the Court should dismiss the official-capacity claims against Deputy Director Pfister and Warden Pierce as moot because Williams has already received all appropriate care with his hernia surgery in August 2018. Defendants' assertion, however, ignores the allegations in the SAC. Williams alleges that he continues to suffer from a painful postsurgical protrusion near the site of his surgery, for which his surgeon has suggested further treatment. (SAC ¶ 29.) Williams further alleges that he seeks injunctive relief from Deputy Director Pfister and Warden Pierce to obtain the appropriate postsurgical treatment. (*Id.* ¶¶ 80.A, 91.A, 99.A, 105.A.) The Court finds that Williams has sufficiently pleaded an ongoing violation of his constitutional rights and that he seeks prospective relief in the form of postsurgical treatment. Williams's claims against Pfister and Pierce in their official capacities may therefore proceed.[5]

## II.    The Grievance Defendants' Motion to Dismiss

Stateville Grievance Officers Parrish and Mansfield and IDOC ARB Member Johnson move to dismiss Count IV, arguing that Williams has failed to allege they were deliberately indifferent to his medical needs.

As an initial matter, Williams purports to sue the Grievance Defendants in both their individual and official capacities. Williams justifies naming the Grievance Defendants in their official capacities by pointing to his claim for injunctive relief, which, in turn, is based on his concern that he will not be provided adequate postsurgical medical treatment going forward. But as noted above, injunctive relief as to the Grievance Defendants would only be appropriate if they

---

[5] The Court observes that while Pierce was Stateville's Warden when the SAC was filed, he no longer holds that position. The current Warden is David Gomez. Accordingly, following the issuance of this opinion, Gomez will be substituted as a Defendant in his official capacity as Warden.

were the persons responsible for ensuring that the requested relief is carried out. *See Gonzalez*, 663 F.3d at 315. Unlike the Stateville's Warden and Wexford, Williams provides no basis for the Court to conclude that grievance officers would have the authority to direct that he be afforded proper post-surgery treatment. Accordingly, the claims against the Grievance Defendants in their official capacities are dismissed.

The Court next turns to the individual-capacity claims against the Grievance Defendants. To state successfully state a claim against a prison administrator whose primary responsibility is reviewing grievances, a plaintiff must allege that the administrator was aware of the plaintiff's serious medical condition and yet failed to take adequate action to prevent a substantial risk to the plaintiff's health. *Perez*, 792 F.3d at 781. As noted above, claims against nonmedical prison officials generally fail when the plaintiff's own allegations show that defendants reasonably relied upon the expertise of medical professionals. *Arnett*, 658 F.3d at 755. But claims may proceed against grievance officers when the pleadings allege that the officers learned of an excessive risk to a prisoner's safety through his grievances or correspondences and nonetheless declined to exercise the authority of their office to rectify the situation. *Perez*, 792 F.3d at 782.

### A. Count IV Against Grievance Officer Parrish

Williams alleges that on August 27, 2015, Parrish denied his July 2015 Nonemergency Grievance and recommended no further action on his behalf because he appeared to be receiving appropriate medical care. (SAC ¶ 44.) In that grievance, Williams described his appointment with Dr. Martija, during which she told him that the growth in his abdomen was "nothing" and directed him to return in a few weeks. (*Id.* Ex. B.) Parrish's response to the grievance indicates that she reviewed Williams's medical record and learned that he had since seen a nurse and a physician's

14

assistant, that medical professionals had ordered labs to address his condition, and that he was to come back for a follow-up appointment in two weeks. (*Id.* Ex. C.)

These allegations fail to state a claim for deliberate indifference against Parrish. As with Warden Lamb, Parrish only received Williams's first grievance, which focused on one doctor's appointment. Her reply indicates that she investigated Williams's grievance by looking at his medical record and saw that he had subsequently been back to see other medical staff members, who ordered labs for him. Based on those allegations, Parrish would have had no reason to believe that Williams was being mistreated or inadequately treated, such that the Eighth Amendment would require her to intervene. *See Arnett*, 658 F.3d at 755 ("[I]f a prisoner is under the care of medical experts, a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands.") Simply put, it was reasonable for Parrish to rely on the prison's medical staff given the information she had at that time; Williams has alleged no basis to conclude otherwise. Therefore, Williams has failed plausibly to allege that Parrish was deliberately indifferent, and so his claim against her is dismissed.

### B. Count IV Against Grievance Officer Mansfield

Williams alleges that around October 2016, after Deputy Director Pfister denied his September 2016 Grievance as a non-emergency, he submitted it again in the typical manner to Grievance Officer Mansfield, who failed to respond. (SAC ¶¶ 55–56.) The September 2016 Grievance asserts that Williams had been suffering from his hernia for "about 15 months," that it had gone from the size of a cherry to the size of a "small belly," that his pain had worsened, and that in his most recent medical visit, Dr. Obaisi offered him only ibuprofen or other nonprescription pain medication. (*Id.* Ex. F.)

15

The Seventh Circuit has held that grievance officers may be liable for prisoners' inadequate medical care if they learn of the inadequate care through prisoner correspondence and fail to exercise the authority of their office to investigate and intervene. *Perez*, 792 F.3d at 781–782. Here, the grievance that Williams submitted to Mansfield explained clearly that he had been suffering from a hernia for over a year, that it was getting worse, and that the prison's medical professionals had failed to help him. Unlike Parrish, who received Williams's initial grievance shortly after he started experiencing abdominal pain, Mansfield allegedly received a grievance stating that Williams had been suffering for months without receiving proper care. There may be myriad reasonable explanations for Mansfield's failure to respond. However, at the motion to dismiss stage, Williams has pleaded facts sufficient to suggest that Mansfield was aware of his serious medical condition and inadequate treatment and thus was deliberately indifferent by failing to respond. Williams's claim against Mansfield may proceed.

### C.     Count IV Against IDOC ARB Member Johnson

Williams alleges that Johnson summarily denied his appeal to the IDOC ARB of the January 2017 Grievance, which provided a detailed explanation of his struggle to get proper hernia treatment over a nearly two-year period. (SAC Ex. H.) In February 2017, Johnson denied the appeal, citing its "misdirection" and instructing Williams to contact his grievance officer and prison healthcare for his medical issues. (SAC ¶ 63.)

Williams has successfully stated a claim of deliberate indifference against Johnson. The grievance she denied clearly describes that over a period of at least a year and a half, medical professionals had refused to treat Williams's hernia effectively and nonmedical prison administrators had failed to take his grievances seriously. As alleged, even to a layperson, it would be clear after reviewing such a complaint that Williams was receiving inadequate care. A

reasonable juror could find that it was not acceptable for Johnson to then refer Williams to the same medical professionals and grievance officers who had been ignoring his complaints for months. "[O]nce an official is alerted to an excessive risk to inmate safety or health through a prisoner's correspondence, 'refusal or declination to exercise the authority of his or her office may reflect deliberate disregard.'" *Perez*, 792 F.3d at 782 (quoting *Vance*, 97 F.3d at 993). In this case, Williams has successfully alleged that Johnson was aware of a possible constitutional violation and yet failed to intervene, instead delegating Williams's grievance back to the same individuals he claimed were responsible for the violation. Therefore, Williams has successfully stated a claim of deliberate indifference against Johnson, and his claim against her may proceed.

### III.     The Wexford Defendants' Partial Motion to Dismiss

The Wexford Defendants move to dismiss all claims asserted against Dr. Okezie and Dr. Henze in their official capacities, arguing that such claims are duplicative of the claims against Wexford. Their motion does not ask the Court to dismiss Williams's claims against the Wexford Individual Defendants in their individual capacities. The Wexford Defendants also request that the Court dismiss Counts I and II of the SAC against Wexford because such claims rely exclusively on Wexford's liability for the actions of its employees. Wexford does not seeks dismissal of Count III, in which Williams alleges that it maintains an unconstitutional policy.

#### A.     Claims Against Dr. Okezie and Dr. Henze in Their Official Capacities

Williams sues Dr. Okezie and Dr. Henze in their official capacities, as well as their individual capacities.[6] (SAC ¶ 14–15.) Because Dr. Okezie and Dr. Henze both work for Wexford

---

[6] The Wexford Defendants' motion asks the Court to dismiss claims against Dr. Martija and Dr. Okezie in their official capacities. (Wexford Defs.' Partial Mot. to Dismiss ¶ 13.) But as Williams acknowledges in his Response, his SAC did not assert a claim against Dr. Martija in her official capacity. (Pl.'s Resp. to Wexford Defs.' Partial Mot. to Dismiss at 1 n.1, Dkt. No. 119.) The Wexford Defendants' Reply clarified that the error was unintentional, and they seek to dismiss Williams's official capacity claims against Okezie and Henze. (Defs.' Reply in Supp. of their Partial Mot. to Dismiss at 2 n.1, Dkt. No. 126.) Thus,

(*id.*), which is also a named Defendant to this suit as a contractor for the State of Illinois, the Wexford Defendants contends that any claims against those Defendants in their official capacities are redundant and should be dismissed. Indeed, an official capacity suit against an individual under § 1983 is equivalent to a claim against the entity he or she represents. *Guzman v. Sheahan*, 495 F.3d 852, 859 (7th Cir. 2007). Therefore, courts in this District have advised that when a plaintiff sues both the entity and the individual in his or her official capacity, the suit against the individual is redundant and should be dismissed. *Brown v. Chi. Bd. of Educ.*, 973 F. Supp. 2d 870, 875 (N.D. Ill. 2013).

Williams argues that his claims against Okezie and Henze in their official capacities are nonetheless proper because he is seeking injunctive relief. But even if a plaintiff is seeking injunctive relief, official capacity claims against individuals add nothing to the suit when the entity itself is already a defendant. *See, e.g.*, *Sharif v. Ghosh*, No. 12-cv-2309, 2014 WL 1322820, at *3 (N.D. Ill. Apr. 1, 2014); *Ford v. Wexford Health Sources, Inc.*, No. 12-cv-4558, 2013 WL 474494, at *8 (N.D. Ill. Feb. 7, 2013); *Woods v. Wexford Health Servs., Inc.*, No. 11-cv-4067, 2012 WL 568603, at *1 (N.D. Ill. Feb. 16, 2012). Accordingly, Williams's claims against Dr. Okezie and Dr. Henze in their official capacities are dismissed.

### B. *Respondeat Superior* Claims Against Wexford

Defendants also seek dismissal of Counts I and II as to Wexford, arguing that such claims depend upon Wexford's liability for the actions of its employees. It is well-established, however, that § 1983 does not permit suits against local governments that arise exclusively from the acts of their employees under a theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Rather, local governments can only be liable under § 1983 if they maintain an

---

the Court treats their motion to dismiss as addressing only the claims against Okezie and Henze in their official capacities.

unconstitutional policy or custom. *Id.* The Seventh Circuit has held that *Monell* also applies to private corporations, such as Wexford, when they are contracted to perform typical governmental duties. *See Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982).

Williams concedes that Wexford cannot be held liable for its employees' actions under current law, but he argues that his claims are "warranted by a nonfrivolous argument for a change to existing law or the establishment of new law." (SAC ¶¶ 81, 91.) In support of this position, Williams points to *Shields v. Illinois Department of Corrections*, 746 F.3d 782, 790–96 (7th Cir. 2014), and *Perez*, 792 F.3d at 780 n.5, two cases in which the Seventh Circuit *in dicta* expressed skepticism about the wisdom of applying the *Monell* rule to private corporations. Even in those cases, however, the Seventh Circuit ultimately reiterated that the rule in *Iskander* remains good law. *Perez*, 792 F.3d at 780 n.5; *Shields*, 746 F.3d at 796. This Court is bound by that well-established precedent. Therefore, Counts I and II are dismissed as to Wexford.

## CONCLUSION

For the reasons explained above, the Court grants in part and denies in part the Warden Defendants' and Grievance Defendants' motions to dismiss (Dkt. Nos. 110, 111), and grants the Wexford Defendants' partial motion to dismiss (Dkt. No. 115). Specifically, the Court dismisses the individual-capacity claims against Defendants Lamb, Williams, and Pierce, but finds that the individual-capacity claims against Defendant Pfister and the official-capacity claims against Defendants Pfister and Pierce may proceed. The Court also dismisses Williams's claims against Defendant Parrish in her individual capacity and Defendants Parrish, Mansfield, and Johnson in their official capacities, but finds that Williams has successfully stated claims against Defendants Mansfield and Johnson in their individual capacities. Finally, the Court dismisses all claims

against the Wexford Individual Defendants in their official capacities and Counts I and II against Wexford.

ENTERED:

Dated: May 28, 2020

Andrea R. Wood
United States District Judge

20